**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| ZWILLO V, CORP. d/b/a WESTPORT FLEA MARKET BAR & GRILL individually and on behalf of all others similarly situated, | Case No. 20-cv-339 |
| | COMPLAINT |
| Plaintiff, | Class Action |
| v. | DEMAND FOR JURY TRIAL |
| LEXINGTON INSURANCE CO., | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Zwillo V, Corp. ("Plaintiff"), individually and on behalf of all others similarly situated, for its Class Action Complaint against Defendant Lexington Insurance Co., an AIG company, ("Defendant"), states and alleges as follows:

## NATURE OF ACTION

1.      According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.      Plaintiff owns and operates the Westport Flea Market Bar and Grill, a Kansas dining establishment. The Food Network's Meat and Potatoes show crowned its burger the "Best Burger in Kansas City." The Flea Market has been a Kansas City dining institution for over thirty years. It operates and owns the premises in Kansas City's historic Westport district at 817 Westport Road, Kansas City, Missouri 64111. In addition, Plaintiff operates Joe Joe's catering out of the insured premises, which is a successful catering business.

1

3.     Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss to Plaintiff's property and have interrupted Plaintiff's business. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiff purchased. Moreover, Plaintiff is not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic-related losses. Plaintiff's policy with Defendant is one such policy and exemplifies the broken promise from insurance companies across the country. Plaintiff estimates that its revenues are down at least 80% because of COVID-19 and the Stay at Home Orders (defined below).

4.     This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by its property insurance agreements it sold to Plaintiff and other businesses.

5.     The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

6.     Over 53,000 Americans have died of COVID-19 as of the date of this filing, according to the Centers for Disease Control and Prevention ("CDC").

7.     A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

2

8.     Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9.     Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

10.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air. According to the New York Times, 95% of the United States population currently is under one or more state or local directives to stay at home.

11.     The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, provide personal protective equipment to its workforce and prohibit customers from entering their facilities. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

12.     Kansas City, Missouri and the State of Missouri have issued stay-at-home orders (hereafter, "Stay at Home Orders" or "Orders"). These Stay at Home Orders remain in effect and have caused the suspension of non-essential and essential businesses.  As a Kansas City business, Plaintiff is subject to these Orders.

13.    The Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business. Plaintiff is no longer permitted to operate its dining room and is restricted to carry out or delivery services.

14.    It has suffered direct physical loss to the property. Although ingress and egress to the property currently is limited due to the Stay at Home Orders and transmission concerns, according to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby caused physical loss and damage to the property.

15.    The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiff's or other Class members' businesses. For example, customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19. Suppliers have also been similarly restricted by the pandemic.

16.    But Plaintiff, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, it purchased property insurance from Defendant, that did not exclude pandemic coverage. A true and accurate copy of the Policy is attached hereto as Exhibit A.

17.    The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in Plaintiff's Policy are materially the same as those policies held by the members of the proposed class.

4

18. The Policy is an all-risk policy, meaning it covers all losses for direct "loss" to the covered property unless specifically excluded. Exhibit A at 12. Loss includes "all risks of direct physical loss or damage to property" unless expressly excluded. *Id.*

19. As set forth below, the Policy also provides coverage for:

   a. losses sustained due to the necessary interruption of business conducted by Plaintiff and caused by direct physical loss or damage ("Business Interruption" coverage) (*id.* at 7);

   b. interruption of business caused by an order from a civil authority ("Civil or Military Authority" coverage) (*id.* at 9);

   c. expenses incurred to minimize interruption of business ("Extra Expense" coverage) (*id.* at 8);

   d. losses caused by the prevention of existing ingress or egress at the premises ("Ingress or Egress" coverage) (*id.* at 9); and

   e. expenses necessary to protect covered property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 18).

20. On or about April 23, 2020, in response to Plaintiff's notice of claim, Defendant denied coverage and refused to cover Plaintiff's COVID-19 losses.

21. Defendant has caused material harm to Plaintiff and the proposed class by refusing coverage under the Policy.

22. On behalf of himself and the class, Plaintiff seeks to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## PARTIES

23. Plaintiff is a Missouri corporation, with its principal place of business in Kansas City, Missouri. Its premises, and the covered property, are located at 817 Westport Road, Kansas City, Missouri 64111.

5

24.     Defendant Lexington Insurance Company is a Delaware corporation with its principal place of business located at 99 High Street, Boston, Massachusetts. Defendant is an AIG company.

## JURISDICTION AND VENUE

25.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division. The Policy at issue covers Plaintiff's facilities located in the State of Missouri.

## FACTUAL BACKGROUND

27.     COVID-19 and the Stay at Home Orders have forced Plaintiff to suspend most of its operations.  Its facility is located in Kansas City, Missouri, which is part of Jackson County. There have been at least 307 confirmed cases of COVID-19 in Jackson County as of the date of this filing.

28.     On March 22, 2020, the City of Kanas City, Missouri issued stay-at-home order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined in the order. The order also required all "non-essential" businesses to cease in-person operations. As defined in the order, "Essential Businesses," include things like healthcare operations, essential infrastructure, and grocery stores. On April 16, 2020, Kansas City extended the Order through May 15.  Restaurants were deemed an Essential Business, but their operations

6

were strictly limited to "delivery or carry out" and as a result Plaintiff was forced to suspend all operations in its dining room.

29.      On April 24, 2020, Jackson County, Missouri issued a stay-at-home order similarly requiring individuals in the county to avoid leaving their homes except as necessary.

30.      On April 3, 2020, the State of Missouri issued a stay-at-home order similarly requiring individuals residing in Missouri to avoid leaving their homes, including to go to work, except as necessary to perform limited activities. On April 16, 2020, Missouri extended its order through May 3, 2020.   That order similarly required restaurants like Plaintiff to limit their operations to take out, delivery or drive-thru services.  Collectively, these are referred to as "Stay at Home Orders" or "Orders."

31.      As of April 17, 2020, at least 42 states and countless local governments have issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

32.      According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[1] According to studies, the virus can live on surfaces for several days if not longer.[2]

33.      In addition, some scientific publications have reported finding COVID-19 in the air.  The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in

---

[1]        https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

[2]        https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[3]

34.     A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[4]

35.     An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[5]

36.     The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[6]

37.     Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[7]

---

[3]     https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[4]     https://www.nature.com/articles/d41586-020-00974-w
[5]     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[6]     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[7]     https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

38.     Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[8]

39.     Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

40.     The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

41.     A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[9] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[10]

42.     The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by

---

[8]     https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

[9]     https://academic.oup.com/cid/article/58/5/683/365793

[10]    *Id.*

9

settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

43.     State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

44.     The Stay at Home Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

> a.   the Johnson County, Kansas Order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space.[11] (emphasis added);
>
> b.   the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which states that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[12] (emphasis added).

45.     In order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiff paid all premiums required by the Policy.

46.     Plaintiff is the Named Insured under the Policy, which remains in force.

47.     Defendant is the effective and liable insurer of the Policy and policies meeting the class definition.

---

[11]     https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20
Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[12]     http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20
Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

48. Generally, under property insurance policies like those issued by Defendant to Plaintiff and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

49. The Policy is an "all-risk" policy. It "insures against all risks of direct physical loss or damage to [the] property … except as … excluded" by the expressly listed exclusions. Ex. A. at 11-12.

50. The Policy does not exclude or limit coverage for losses from COVID-19 or pandemics.

51. The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

52. In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

53. Despite the availability of a specific exclusion for viruses, Plaintiff's Policy contains no relevant exclusion. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

11

54.     Plaintiff's Policy contains an exclusion for:

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

Exhibit A at 46.

55.     The virus that causes COVID-19 is not, however, listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976 or the Toxic Substances Control Act because COVID-19 did not exist in 1976. Nor has it been designated by the U.S. Environmental Protection Agency as an irritant or contaminant. Consequently, and without limitation, the exclusion does not apply.

56.     Because damage due to viruses constitute physical damage and loss under the Policy, and/or the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy. Moreover, to mitigate further losses, as required by the Policy, Plaintiff suspended all in-person dining and in-person catering operations when officials announced that COVID-19 posed a risk of causing further physical damage and loss.

57.     The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific clauses:

58.     Defendant is obligated to pay for actual loss of **"Business Interruption"** sustained due to direct physical loss or damage. Exhibit A at 7. Such losses are defined as actual losses. *Id.*

12

Plaintiff has suffered lost business income because it has reduced operations of its business due to COVID-19.

59.     Defendant also agreed to provide coverage from an interruption to business caused by an order from a **"Civil or Military Authority."** Exhibit A at 9. Specifically, Defendant agreed to "pay for interruption of business" that Plaintiff sustained caused "when access to the premises is prohibited by order of civil or military authority. *Id.* Access has been restricted to the Plaintiff's property due to the presence and threat of COVID-19 as customers have been prohibited from entering the dining room.

60.     Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 8. Extra Expenses are "the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage." *Id.* Plaintiff has suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

61.     The Policy also provides "**Ingress and Egress**" coverage, which requires the insurer to pay for actual losses sustained by the prevention of existing ingress or egress at the premises. Exhibit A at 9. To mitigate the spread of COVID-19, access has been restricted and prevented to Plaintiff's premises.

62.     Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to pay all expenses borne by the Insured due prevent actual or imminent loss. Exhibit A at 18. Plaintiff has taken such steps by, for example, complying with the Stay-at-Home Orders.

13

63.     Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's full operations have largely been suspended, and it has lost revenue and business opportunities.

64.     Plaintiff submitted a claim to Defendant for coverage under the Policy, but Defendant has denied Plaintiff's claim.

## CLASS ACTION ALLEGATIONS

65.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following nationwide classes:

a. **Nationwide Declaratory Judgment and Injunctive Class.** All businesses subject to a Stay at Home Order that are covered by one of the Defendant's policies which contains **Business Interruption, Civil or Military Authority, Extra Expense, Ingress or Egress,** and/or **Sue and Labor** coverage on terms similar to the Plaintiff's policy ("Policies") which were in effect during the COVID-19 pandemic.

b. **Nationwide Breach Class.** All policyholders of Defendant who made a claim and were denied coverage under one of Defendant's Policies due to COVID-19.

c. **Missouri Subclass.** All policyholders who purchased one of Defendant's Policies in Missouri and was denied coverage due to COVID-19.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives,

heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

66.     Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

67.     **Numerosity**.  COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, hundreds or more policies issued with the relevant provisions.   Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.   Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Missouri Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Missouri Subclass members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

68.     **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

    a.  Do the Policies cover losses resulting from the COVID-19 pandemic?

    b.  Do the Policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

    c.  Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

    d.  Does the **Business Interruption** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay-at-Home Orders?

    e.  Does the **Civil or Military Authority** coverage of the Policies cover losses caused by suspension of business due to Stay-at-Home Orders issued by state and local governments?

f. Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiff and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

g. Does the **Ingress and Egress** coverage of the Policies cover the losses caused by Plaintiff and the Class Members' inability to access their premises?

h. Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay-at-Home Orders?

i. Has Defendant breached its Policies by refusing to cover COVID-19 related losses?

j. Are Class members entitled to reasonable attorneys' fees and expenses?

69. **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of business are impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

70. **Typicality.** Plaintiff's claims are typical of those of the Classes as Plaintiff was subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

71. **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Missouri Subclass. The presentation of separate actions by individual Class members and Missouri Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

16

72.     **Adequacy**. Plaintiff is an adequate representative of the Class and Missouri Subclass because he is a member of the Class and its interests do not conflict with the interests of those it seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and its counsel, who have extensive experience prosecuting complex class litigation.

73.     **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

74.     **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiff reserves the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following Policy provisions: **Business Interruption, Civil or Military Authority, Extra Expense, Ingress or Egress** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

<u>**COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INTERRUPTION**</u>
**(On behalf of Nationwide Declaratory Judgment and
Injunctive Class and Missouri Subclass)**

75.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

76.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

17

77.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies. Plaintiff requested coverage for COVID-19 related losses through its agent. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

78.     Plaintiff contends that Defendant has breached the Policies in the following respects:

a.     Plaintiff and the class have suffered losses covered by the Business Interruption coverage in the Policies.

b.     Defendant is obligated to pay Plaintiff and the class for those losses.

c.     Defendant has failed to pay Plaintiff and the class for those losses.

79.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

80.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Interruption Coverage Extension; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – BUSINESS INTERRUPTION
### (On behalf of Nationwide Breach Class and Missouri Subclass)

81.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

82.     Plaintiff and the class purchased property coverage policies from Defendant.

18

83. The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

84. Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

85. Plaintiff and the class have sustained a loss under the Business Interruption Coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

86. Defendant has not agreed to pay the claim for Business Interruption or requested a proof of loss and has denied coverage.

87. Defendant has denied claims for Business Interruption related to COVID-19 on a uniform and class-wide basis, in breach of the policies.

88. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL OR MILITARY AUTHORITY
**(On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)**

89. The preceding paragraphs are incorporated by reference as if fully alleged herein.

90. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

91. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

92.     Plaintiff contends that Defendant has breached the Policies in the following respects:

a.      Plaintiff and the class have suffered losses covered by the Civil or Military Authority coverage in the Policies.

b.      Defendant is obligated to pay Plaintiff and the class for those losses.

c.      Defendant has failed to pay Plaintiff and the class for those losses.

93.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

94.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil or Military Authority coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT IV: BREACH OF CONTRACT – CIVIL OR MILITARY AUTHORITY
### (On behalf of Nationwide Breach Class and Missouri Subclass)

95.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

96.     Plaintiff and the class purchased property coverage policies from Defendant.

97.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

98.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

20

99. Plaintiff and the class have sustained a loss under the Civil or Military Authority coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home Orders.

100. Defendant has not agreed to pay the claim for Civil or Military Authority or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

101. Defendant has denied claims for recovery under the Civil or Military Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

102. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## <u>COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE</u>
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

103. The preceding paragraphs are incorporated by reference as if fully alleged herein.

104. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

105. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

106. Plaintiff contends that Defendant has breached the Policies in the following respects:

a. Plaintiff and the class have suffered losses covered by the Extra Expense coverage in the Policies.

b. Defendant is obligated to pay Plaintiff and the class for those losses.

c.    Defendant has failed to pay Plaintiff and the class for those losses.

107.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

108.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE
### (On behalf of Nationwide Breach Class and Missouri Subclass)

109.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

110.    Plaintiff and the class purchased property coverage policies from Defendant.

111.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

112.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

113.    Plaintiff and the class have sustained a loss under the Extra Expense coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home Orders.

114.    Defendant has not agreed to pay the claim for Extra Expense or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

115. Defendant has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

116. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – INGRESS AND EGRESS
**(On behalf of Nationwide Declaratory Judgment and
Injunctive Class and Missouri Subclass)**

117. The preceding paragraphs are incorporated by reference as if fully alleged herein.

118. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

119. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

120. Plaintiff contends that Defendant has breached the Policies in the following respects:

a. Plaintiff and the class have suffered losses covered by the Ingress and Egress coverage in the Policies.

b. Defendant is obligated to pay Plaintiff for those losses.

c. Defendant has breached its obligation to pay the Plaintiff and the class for those losses.

121. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

23

122.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Ingress and Egress coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VIII: BREACH OF CONTRACT – INGRESS AND EGRESS
### (On behalf of Nationwide Breach Class and Missouri Subclass)

123.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

124.     Plaintiff and the class purchased property coverage policies from Defendant.

125.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

126.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

127.     Plaintiff and the class have sustained a loss under the Ingress and Egress coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home orders.

128.     Defendant has not agreed to pay the claim under the Ingress and Egress coverage or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

129.     Defendant has denied claims for recovery under the Ingress and Egress coverage related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

130.   As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

### COUNT IX: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
**(On behalf of Nationwide Declaratory Judgment and
Injunctive Class and Missouri Subclass)**

131.   The preceding paragraphs are incorporated by reference as if fully alleged herein.

132.   The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

133.   An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

134.   Plaintiff contends that Defendant has breached the Policies in the following respects:

a.      Plaintiff and the class have suffered losses covered by the Sue and Labor provision in the Policies.

b.      Defendant is obligated to pay Plaintiff and the class for those losses.

c.      Defendant has not paid for those losses and is in breach.

135.   Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

136.   Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT X: BREACH OF CONTRACT – SUE AND LABOR
### (On behalf of Nationwide Breach Class and Missouri Subclass)

137.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

138.    Plaintiff and the class purchased property coverage policies from Defendant.

139.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

140.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

141.    Plaintiff and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

142.    Defendant has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

143.    Defendant has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

144.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a. That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b. For a judgment against Defendant for the causes of action alleged against it;

c. For compensatory damages in an amount to be proven at trial;

d. For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

e. For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy;

f. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g. For Plaintiff's attorney's fees;

h. For Plaintiff's costs incurred; and

i. For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: April 27, 2020                                    Respectfully submitted,

                                               **STUEVE SIEGEL HANSON LLP**

                                               *s/ Patrick J. Stueve*
                                               Patrick J. Stueve, MO #37682
                                               Bradley T. Wilders, MO #60444
                                               Curtis Shank, MO #66221
                                               460 Nichols Road, Suite 200
                                               Kansas City, Missouri 64112
                                               Telephone:    816-714-7100

27

Facsimile:	816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com
Email: shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220
Lexington, Missouri 64067
Phone: (660) 259-6175
Fax: (660) 259-4571
kent@lelaw.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile: (816) 561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo, MO #29478
Dawn M. Parsons, MO #42046
Michael F. Barzee, MO #65764
Rachael D. Longhofer, MO #71402
2001 Wyandotte Street
Kansas City, MO 64108
816-931-0500
816-931-5775 (Fax)
rlombardo@sls-law.com
dparsons@sls-law.com
mbarzee@sls-law.com
rlonghofer@sls-law.com

*Attorneys for Plaintiff and the Proposed Classes*

28