**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ZWILLO V., CORP. d/b/a WESTPORT FLEA MARKET BAR & GRILL, Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:20-cv-00339-RK |
| LEXINGTON INSURANCE CO. | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT LEXINGTON INSURANCE COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

DENTONS US LLP

| Gregory T. Wolf | MO Bar No. 43717 |
|---|---|
| Lisa M. Krigsten | MO Bar No. 61583 |
| Paul M. Flucke | MO Bar No. 64849 |

4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
Gregory.Wolf@dentons.com
Lisa.Krigsten@dentons.com
Paul.Flucke@dentons.com

*Attorneys for Defendant Lexington Insurance Company*

## TABLE OF CONTENTS

Page

ALLEGATIONS AND DOCUMENTS CENTRAL TO THE COMPLAINT ............................ 1

    A.    Zwillo's Policy Covers Direct Physical Loss of or Damage to Property .............. 2

    B.    Policy Exclusions for Health-Harming Contaminants............................................ 4

ARGUMENT ............................................................................................................................ 5

I.    THE COMPLAINT DOES NOT ALLEGE FACTS THAT COULD SUPPORT A FINDING OF COVERAGE. ................................................................................ 6

    A.    Plaintiff Has Not Alleged Facts Supporting Business Interruption Coverage........ 6

        i.    Missouri Law Interprets "Physical Loss or Damage to Property" to Require Physical Alteration of the Property. ................................. 6

        ii.    The Mere Existence of COVID-19 on Property Is Not Direct Physical Loss or Damage. ..................................................................... 7

        iii.    The Speculative Existence of COVID-19 on Its Property Did Not Cause Plaintiff's Alleged Business Interruption........................................ 8

        iv.    The Stay-at-Home Orders and General Public Fear Are Not "Direct Physical Loss to Property." ................................................................. 8

    B.    Plaintiff Does Not Allege Facts Necessary to Fall within the Policy's Coverages For Civil Authority, Ingress/Egress, Extra Expense or Sue and Labor ................ 10

II.    ZWILLO'S LOSSES ARE EXCLUDED BECAUSE THEY RESULT FROM ACTUAL OR THREATENED CONTAMINATION BY A VIRUS WHICH HARMS HUMAN HEALTH........................................................................................................................ 12

CONCLUSION...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................6

*State ex rel. Blue Springs School District v. Grate*,
576 S.W.3d 262 (Mo. Ct. App. 2019) .....................................................................16

*City of Chicago v. Factory Mut. Ins. Co.*,
No. 02 C 7023, 2004 WL 549447 (N.D. Ill. Mar. 18, 2004) ...................................12

*Dan's Super Market, Inc. v. Wal-Mart Stores, Inc.*
38 F.3d 1003 (8th Cir. 1994) ...................................................................................14

*Depositors Ins.Co. v. Dollansky*,
905 N.W.2d 513 (Minn. Ct. App. 2017), *aff'd*, 919 N.W.2d 684 (Minn. 2018) ......9

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
No 20-258-CB at p. 18 (Mich. Cir. Ct. July 1, 2020) ......................................7, 8, 10

*Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*,
161 F. Supp.3d 970 (D. Kan. 2016) ...........................................................................6

*Great Southern Bank v. Hartford Fire Ins. Co.*,
No. 6:13-CV-03230, 2013 WL 11233984 (W.D. Mo. Oct. 30, 2013) .......................6

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire
Ins. Co. of Hartford*,
No. CIV.A. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ....................11

*Levy v. Ohl*,
477 F.3d 988 (8th Cir. 2007) .....................................................................................7

*Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*,
No. CIV.A. 399CV1623D, 2002 WL 356756 (N.D. Tex. Mar. 5, 2002)................16

*Lockhart v. U.S.*,
136 S. Ct. 958 (2016) ...............................................................................................15

*Mama Jo's, Inc. v. Sparta Insurance Co.*,
No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) ...................8

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
884 N.E.2d 1130 (Ohio App. 2008)...........................................................................8

*Medavera, Inc. v. Travelers Casualty Ins. Co. of Am.*,
No. 18-03174-CV-S-BP, 2019 WL 5686713 (W.D. Mo. May 31, 2019) ..........6, 10

*Messina v. Shelter Ins. Co.*,
585 S.W.3d 839 (Mo. App. W.D. 2019)........................................................................9, 13

*Noble Sys. Corp. v. Alorica Central*,
LLC, 543 F.3d 978,982 (8th Cir. 2008)..................................................................................2

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
911 F.3d 505 (8th Cir. 2018) ............................................................................................2, 3

*Pentair, Inc. v. Am. Guarantee and Liab. Ins. Co.*,
400 F.3d 613 (8th Cir. 2005) ................................................................................................9

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
385 F. Supp. 2d 280 (S.D.N.Y. 2005)..................................................................................11

*RK Mechanical, Inc. v. Travelers Prop. Cas. Co. of Am.*,
944 F. Supp.2d 1013,1024 (D. Col. 2011)...........................................................................13

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*,
1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1..............................................................7, 10

*Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*,
465 F.3d 834 (8th Cir. 2006) ...........................................................................................9, 10

*Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*,
880 F.3d 1007 (8th Cir. 2018) ...............................................................................................6

*Syufy Enterprises v. Home Ins. Co. of Indiana*,
No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .........................................11

*U.S. v. Lara-Ruiz*,
681 F.3d 914 (8th Cir. 2012) ...............................................................................................15

*U.S. v. Loyd*,
886 F.3d 686 (8th Cir. 2019) ...............................................................................................15

*United Air Lines, Inc. v. Ins. Co. of State of PA*,
439 F.3d 128 (2d Cir. 2006)..................................................................................................11

*Universal Image Productions, Inc. v. Federal Ins. Co.*,
475 Fed.Appx. 569 (6th Cir. 2012).........................................................................................8

*Welspun Pipes, Inc. v. Liberty Mut. Fire Ins. Co.*,
891 F.3d 351 (8th Cir. 2018) ...............................................................................................13

*Winthrop Resources Corp. v. Eaton Hydraulics, Inc.*,
361 F.3d 465 (8th Cir. 2004) ...............................................................................................15

**Statutes**

15 United States Code § 2601 *et. seq.* ...................................................................................16

33 United States Code § 1251 *et seq.* ..................................................................................15

42 United States Code
§ 6901 *et seq.* ......................................................................................................................16
§ 7401 *et seq.* ......................................................................................................................15

**Other Authorities**

40 Code of Federal Regulations
Subchapter C .........................................................................................................................16
pts. 239 through 282 .............................................................................................................16
§ 131 *et seq.* ........................................................................................................................16

Federal Rules of Civil Procedure 12(b)(6).............................................................................1

L.R. 7.0 ...................................................................................................................................1

Under Fed. R. Civ. P. 12(b)(6) and L.R. 7.0, Lexington Insurance Company moves to dismiss this case because Plaintiff Zwillo V., Corp. fails to state a claim on which relief may be granted. Plaintiff's financial losses from the COVID-19 pandemic and related government stay-at-home orders are not covered under the commercial property insurance policy it purchased from Lexington (the "Policy"). That Policy insures against direct physical loss or damage to property; it does not provide coverage for changing social or business conditions or other general business risks. Plaintiff has not alleged any facts to support a finding that direct physical loss or damage to property caused the business interruption that led to its financial losses. Rather, Plaintiff alleges government stay-at-home orders prevented it from offering in-person dining, and that general public fear about COVID-19 kept its customers home. Both of the two courts that have addressed similar claims for losses from COVID-19 have found that they are not recoverable under property insurance policies like the one Plaintiff purchased from Lexington.

Even if the allegations could support a claim for business interruption loss caused by direct physical loss or damage to property, the Policy expressly excludes any loss or damage caused by, the release or threat of health-harming contaminants, including "virus[es]." This exclusion applies regardless of whether the loss is "direct or indirect, proximate or remote" or caused "in whole or in part" by a covered loss. (Compl., Ex. A at 47.) The COVID-19 virus[1] harms human health, just as Plaintiff alleges. Plaintiff's allegations that COVID-19 caused its customers to stay away from fear of infection, and the government to enter stay-at-home orders limiting it to take-out and delivery, fall squarely within the Policy's exclusion. Accordingly, this action seeking coverage for COVID-related business losses under Plaintiff's property policy cannot survive.

### ALLEGATIONS AND DOCUMENTS CENTRAL TO THE COMPLAINT

The Complaint alleges that "COVID-19 and the resulting response by state and local governments have … interrupted Plaintiff's business," resulting in an 80% loss of revenue. (Compl. ¶ 3.) Specifically, Zwillo alleges that Kansas City and the State of Missouri have issued stay-at-home orders

---

[1] In its Complaint, Plaintiff uses "COVID-19 virus" as interchangeable with SARs-COV-2, the formal name for the virus that causes the COVID-19 disease. (Compl. ¶ 5.) Lexington has adopted the same convention here.

1

which have financially impacted it by limiting its business to carry out and delivery services. (*Id.* ¶¶ 12-13; *see also* Ex. 1 (Missouri order); Ex. 2 (Kansas City order); Ex. 3 (Johnson County order).)[2]

The stay-at-home orders required residents to "avoid leaving their homes or places of residence" and, when they must leave home, to "practice social distancing." (Ex. 1 ¶ 1; *see also* Ex. 2 § I.A.) Individuals are expressly permitted to patronize restaurants by using "drive-thru, pickup or delivery options," but must "avoid eating or drinking at restaurants, bars or food courts." (Ex. 1, ¶ 7; Ex. 2, § 3.A.2.xv The stated purpose of the order is to "protect public health and prevent the further spread of COVID-19.") (See Ex. 1 at 1; see also Compl. ¶ 10 (alleging orders entered "in an effort to combat the virus and slow the spread of COVID-19").)

Plaintiff alleges that "[e]veryone is at risk of getting COVID-19" because infected individuals discharge "aerosol particles" when they "cough, sneeze or talk" which "can spread widely through the air and settle on surfaces hundreds of feet away. (*Id.* ¶¶ 9, 32-43). Plaintiff also alleges that "[t]he transmission of COVID-19" has "otherwise affected Plaintiff's … business[]" because "customers cannot access the property due to … fear of being infected with or spreading COVID-19." (Compl. ¶ 15.)

Plaintiff seeks coverage for its financial losses under five provisions of the Policy: Business Interruption, Civil Authority, Ingress/Egress, Extra Expense, and Sue and Labor.[3]

### A.    Zwillo's Policy Covers Direct Physical Loss of or Damage to Property

Lexington issued a commercial property policy to Zwillo insuring the property on which Westport Flea Market Bar and Grill is located ("the insured property"). A copy of the Policy is attached as Exhibit A to Plaintiff's Complaint, and is therefore properly considered by the Court in deciding this Motion.[4] Subject to its terms and conditions, the Policy insures against all risks of "direct physical loss

---

[2] The Court may take judicial notice of these orders as they are central to Plaintiff's Complaint; they are referenced repeatedly (see Compl. ¶¶ 3, 10-15, 27-31), and allegedly gave rise to the business loss claimed. *See, e.g.*, *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (court may take judicial notice of documents "embraced in" the complaint and central to its allegations). In addition, the Court may take judicial notice of the orders as public records. *Noble Sys. Corp. v. Alorica Central*, LLC, 543 F.3d 978,982 (8th Cir. 2008).
[3] Zwillo alleges ten counts which seek (1) a declaration or injunction establishing coverage and (2) breach of contract for denial of coverage under each of the five provisions of the Policy it says apply. Because there is no coverage as a matter of law under the provisions at issue, all of Plaintiff's claims fail.
[4] *See, e.g.*, *Park Irmat Drug Corp.*, 911 F.3d at 512.

2

of or damage to property" not otherwise excluded. (Compl. Ex. A at 12-13.) The Policy covers business interruption loss in three defined circumstances.

First, the Business Interruption provision insures against loss resulting from (1) "necessary interruption of business conducted by the Insured" that is (2) "caused by direct physical loss or damage by" a covered peril:

> **BUSINESS INTERRUPTION**
> Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and **caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein**.

(Compl. Ex. A, at 8 (emphasis added).) Business Interruption loss is paid only during the "period of restoration," defined as beginning with "the date of direct physical loss or damage" by a covered peril and ending "on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." (*Id*. at 9.) Business Interruption coverage would apply, for example, where a fire caused physical loss or damage to the insured restaurant, preventing it from operating while repairs were being made.

Second, the Policy's Civil Authority coverage applies to business interruption resulting from loss or damage to any property "when access to the premises is prohibited by a civil or military authority for a period not exceeding two (2) weeks":

> This policy, subject to all of its provisions and without increasing the Limit of Liability … also provides coverage for interruption of business conducted by the Insured resulting from loss or damage, by the perils insured against, during the term of this policy, to … any property when access to the premises is prohibited by order of civil or military authority, for a period not exceeding two (2) weeks.

(*Id*. at 10) Civil Authority coverage would apply, for example, where local authorities temporarily cordon off an area following a fire at another property, prohibiting access to the restaurant.

Third, the Policy's Ingress and Egress coverage applies when loss or damage to any property "prevent[s] ingress to or egress from the Insured's premises, for a period not exceeding two (2) weeks":

> This policy, subject to all of its provisions and without increasing the Limit of Liability … also provides coverage for interruption of business conducted by the Insured resulting from loss or damage, by the perils insured against, during the term

3

of this policy, to … any property thereby preventing ingress to or egress from the Insured's premises, for a period not exceeding two (2) weeks.

(*Id*. at 10.) Ingress/Egress coverage would apply, for example, where debris from a fire on a neighboring property temporarily prevents ingress to or egress from the insured restaurant.

The Policy also covers two categories of expenses, Extra Expenses and Sue and Labor costs, which Plaintiff alleges apply here. Extra Expenses are defined as the "excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any" covered peril:

> **EXTRA EXPENSE**
> Extra Expense meaning the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no **loss or damage by any of the perils covered herein** during the term of this policy to Real and/or Personal Property as covered herein.

(*Id*. at 9 (emphasis added).)

Sue and Labor expenses are expenses incurred by the insured "to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property" following an "actual" loss or, with prior approval, in the case of "imminent" loss:

> **SUE AND LABOR**
> In case of actual (or imminent, with prior notice to and approval from this Company) **loss or damage by a peril Insured against**, it shall, without prejudice to the insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property, or any part of the property, insured hereunder without prejudice to this insurance … The expenses so incurred shall be borne by the Insured and the Company in accordance with the policy conditions in regard to losses including deductible application.

(*Id*. at 19 (emphasis added).) Both Extra Expense and Sue and Labor apply to expenses within the coverages' insuring language; they do not provide a basis for recovering lost business income.

## B. Policy Exclusions for Health-Harming Contaminants

The Policy excludes coverage for any loss or damage "caused by, resulting from, contributed to or made worse by" the "actual" or "threatened" "release, discharge escape or dispersal" of "contaminants or pollutants," which "can cause or threaten damage to human health

4

or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property." (Compl. Ex. A., at 47.) The definition of contamination specifically includes, but is not limited to, "virus." (*Id.*) The full text of the Exclusion provides:

> **Pollution and Contamination Exclusion.**
>
> This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy….
>
> CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, **which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder**, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.* (emphasis added).) The exclusion applies "against loss or damage caused directly or indirectly by" virus and "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id*. at 13). The exclusion applies even where loss or damage is also "in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy." (*Id*. at 47)

## ARGUMENT

To survive a motion to dismiss, the insured must allege facts which, if true, would "allow[] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations "are not entitled to the assumption of truth." *Id*. at 679. It is not enough for the insured to generally allege that coverage requirements have been met. *Id*. The insured must allege specific facts which, if true, would support a finding of coverage. *Id*.; *Great Southern Bank v. Hartford Fire Ins. Co.*, No. 6:13-CV-03230, 2013 WL 11233984 at *3 (W.D. Mo. Oct. 30, 2013) (dismissing where policy did not provide coverage based on facts alleged).

I.      **The Complaint Does Not Allege Facts that Could Support a Finding of Coverage.**

Under Missouri law, the insured has the burden of establishing that its claim falls within the policy's coverage. *Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018) ("It is the insured's burden to establish coverage under the policy.") Plaintiff has not alleged any facts that could allow it to meet that burden here.

A.      **Plaintiff Has Not Alleged Facts Supporting Business Interruption Coverage.**

i. **Missouri Law Interprets "Physical Loss or Damage to Property" to Require Physical Alteration of the Property.**

While many circumstances can cause interruption to a business, to come within the Policy's Business Interruption coverage, Plaintiff must show that interruption of its business was caused by "direct physical loss or damage" to covered property. (Compl. Ex. A, at 8 (Business Interruption coverage applies to "necessary interruption of business … caused by direct physical loss or damage.")) "Direct physical loss or damage" in an insurance policy requires "tangible" impact that physically alters property. *Medavera, Inc. v. Travelers Casualty Ins. Co. of Am.*, No. 18-03174-CV-S-BP, 2019 WL 5686713 at *2 (W.D. Mo. May 31, 2019) (adopting and collecting case law from other jurisdictions holding that physical loss or damage must be "tangible"); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp.3d 970, 978 (D. Kan. 2016) (holding "the phrase 'physical damage' in an insurance policy is widely accepted to mean a 'physical alteration'"). "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Couch on Ins. § 148:46) (emphasis added). This jurisprudence is on all fours with the terms of the Policy, which only allow for the recovery under business interruption loss "during the period of restoration," when property is being "repaired, rebuilt or replaced." That condition necessarily requires property damage that is tangible and capable of being "repaired, rebuilt or replaced." (Compl. Ex. A, p. 9) Here, Plaintiff speculates that customers and employees of its restaurant

"likely" were infected with COVID-19 and concludes this caused physical loss and damage, but has not alleged that any tangible, physical alteration to the property – capable of being repaired, rebuilt or replaced – caused its claimed losses.

### ii. The Mere Existence of COVID-19 on Property Is Not Direct Physical Loss or Damage.

Even if the Court wishes to credit Plaintiff's speculative and conclusory allegations that COVID-19 was present on its property and can theoretically live on surfaces for several days, such allegations are insufficient for the Policy's Business Interruption coverage. Both of the two courts addressing the issue have rejected attempts to recover COVID-19 losses under property insurance policies, on the grounds claimed financial loss was not caused by direct physical loss or damage. In rejecting a motion for preliminary injunction by an insured printing company, Judge Caproni in the Southern District of New York stated: COVID-19 "damages lungs. It doesn't damage printing presses." Ex. 4, *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15;[5] *see also Ex. 6, Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No 20-258-CB at p. 18 (Mich. Cir. Ct. July 1, 2020) (dismissing restaurant's claim for lost business income as a result of stay-at-home orders restricting dine-in services because, among other things, the insured did not allege facts to support a finding that direct physical loss or damage caused business interruption).[6]

These recent decisions are consistent with pre-COVID case law in other contexts holding that temporary deposits on surfaces, which can be cleaned, are not direct physical loss or damage. *See, e.g. Universal Image Productions, Inc. v. Federal Ins. Co.*, 475 Fed.Appx. 569, 574, n.8 (6th Cir. 2012) (items that could be cleaned by "Lysol" and ordinary washing had not suffered physical loss); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144 (Ohio App. 2008) (black staining from mold was not direct physical loss because it "was only temporary and did not affect

---

[5] The plaintiff voluntarily dismissed its case following the court's denial of its preliminary injunction, and thus no written opinion was issued. A copy of the hearing transcript is available through the Federal Court's PACER filing system. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit 4. This court may take notice of judicial opinions and public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).
[6] The *Gavrilides* court's order and transcript from the hearing where the court explained its ruling are attached as Exhibits 5 and 6, respectively.

the structure of the wood"); *Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974 at *9 (S.D. Fla. June 11, 2018) (dust and debris on the property, which needed to be cleaned, was not direct physical loss or damage).

### iii. The Speculative Existence of COVID-19 on Its Property Did Not Cause Plaintiff's Alleged Business Interruption.

But, even if Plaintiff's speculation regarding the existence of the COVID-19 virus on its property could be direct physical loss or damage, Zwillo has not alleged that the existence of COVID on its property *caused* the interruption to its business, as required to fall within the Policy's Business Interruption coverage. To the contrary, Zwillo alleges that COVID was "likely" on its property for months before government orders required it to stop in-person dining, but that it continued in-person dining until the shut-down orders required it to shift to take out and delivery. (Compl. at ¶ 14.) Indeed, Zwillo does not allege that it ever shut down or restricted its operations because there were "likely' infected individuals on its property or in order to clean COVID from property surfaces, and it is not seeking to recover the costs of a shutdown for the period needed to complete any property restoration. (*See*, *e.g.*, Compl. Ex. A at 8-9 (permitting insured to recover for business interruption only during the "period of restoration" necessary to repair, rebuild or replace damaged property).)

As noted above, business interruption loss is only covered if there is a Period of Restoration –during which the property is repaired, replaced or rebuilt. (Compl. Ex. A, at 9) Plaintiff has not alleged such a Period of Restoration here. Zwillo instead alleges that its damages began when customers started staying home because of general "fear" of COVID and it "was forced to suspend all operations in its dining room" due to the stay-at-home orders. Customer fear and the stay-at-home orders were both caused by COVID-19 – but not by any direct physical loss or damage to insured property that is under repair, as the Policy required. (Compl. ¶¶ 13, 15, 27-30, 63.)

### iv. The Stay-at-Home Orders and General Public Fear Are Not "Direct Physical Loss to Property."

To get around the obvious conclusion that COVID-19 does not damage property, Plaintiff alleges that the stay-at-home orders are *themselves* direct physical loss because they caused

"Plaintiff to have lost the use of its premises for their intended purposes." (Compl. ¶¶ 3, 56). But the Eighth Circuit has squarely rejected the argument that "direct physical loss or damage is established *whenever* property cannot be used for its intended purpose." *Pentair, Inc. v. Am. Guarantee and Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (applying Minnesota law).[7] In *Pentair*, the court was not persuaded by the insured's argument that factories' inability to function after a loss of power constituted a direct physical loss or damage under its insurance policy. *Id.* In another case, the Eighth Circuit rejected an insured's argument that it suffered a direct physical loss when it was unable to fill orders after the USDA placed an embargo on the importation of beef products from Canada due to "mad cow disease." *Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d 834, 835 (8th Cir. 2006) (applying Minnesota law). As plaintiff alleges is the case here (Compl. ¶ 10), the government imposed restrictions that restricted Source Food's use of its covered property (there, beef) in order to prevent the spread of disease. 465 F.3d at 835. The Eighth Circuit observed that "[t]o characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Source Food Technology, Inc., 465 F.3d* at 838. Just like the USDA's restriction on importation of food does not constitute a physical loss or damage to property, the stay-at-home orders' restrictions on dine-in food service did not cause a physical loss or damage to property.

A Michigan court reached that same conclusion in granting a motion to dismiss brought by a restaurant seeking coverage for business losses caused by stay-at-home orders restricting onsite dining to prevent COVID-19. In rejecting the Plaintiff's argument that the stay-at-home orders constituted direct physical loss or damage because "people were physically restricted from dine-in services," the Michigan court said: "that argument is just simply nonsense. And it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration" to property. Ex. 6, at 18 (*Gavrilides Mgmt. Co.*, No 20-258-CB); *see also id.* at 19 ("The

---

[7] There are no differences in Minnesota and Missouri law relevant here; both states seek to apply the plain meaning of an insurance policy. *See, e.g., Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842-43 (Mo. App. W.D. 2019); *Depositors Ins.Co. v. Dollansky*, 905 N.W.2d 513, 515 (Minn. Ct. App. 2017), *aff'd*, 919 N.W.2d 684 (Minn. 2018).

complaint here does not allege any physical loss of or damage to the property. The complaint alleges a loss of business due to executive orders shutting down the restaurants for … dining in the restaurant due to the Covid-19 threat."); Ex. 4 at 8. *Social Life Magazine*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1, ("That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property…. You may not even have the virus in your property.").

Plaintiff further suggests that the Policy covers losses caused by customer "fear of… COVID-19." (Compl. ¶ 15.) But Plaintiff does not allege that business downturns caused by general public fear qualifies as physical loss or damage, nor could it. *Medavera*, 2019 WL 5686713 at *2 (W.D. Mo. May 31, 2019) ("Direct physical loss or damage" in an insurance policy requires "tangible" impact that physically alters property.)

### B. Plaintiff Does Not Allege Facts Necessary to Fall within the Policy's Coverages For Civil Authority, Ingress/Egress, Extra Expense or Sue and Labor

In addition to Business Interruption, Plaintiff seeks to recover under four other policy coverages: Civil Authority (counts III and IV), Ingress and Egress (counts VII and VIII), Extra Expense (counts V and VI) and Sue and Labor (counts IX and X). But Plaintiff has not alleged facts required to come within the specific factual circumstance to which those coverages apply.

Civil Authority covers business interruption resulting from loss or damage to property by a peril insured against … "when access to the premises is prohibited by order of civil or military authority, for a period not exceeding two (2) weeks." (Compl. Ex. A at 10). Here, Plaintiff alleges that stay-at-home orders that interrupted its business were imposed "to combat the virus and slow the spread of COVID-19" (Compl. ¶ 10), not as a result of loss or damage to any property. *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 135 (2d Cir. 2006) (no civil authority coverage where restrictions were imposed to prevent "future attacks" after September 11, and "had nothing to do with repairing, mitigating, or responding to" existing property damage).

And, Plaintiff has not alleged that access to its business was "prohibited" by any civil authority order. To the contrary, the State and City orders they reference expressly permit

continued access to the premises for take-out or delivery options. (Ex. 1, at ¶ 7; Ex. 2 at § 3.A. 2.xv) While the orders eliminate one purpose for being on the property – in person-dining – they do not prohibit "access" to the property. *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While order grounding planes after September 11 "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke [Civil Authority] coverage"); *see also*, *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV.A. 06-770-C, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) (no civil authority coverage where employees were not prohibited from "entering its business premises" and in fact had done so "in very limited numbers"); *Syufy Enterprises v. Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (city-imposed "dawn-to-dusk curfews" to prevent property damage and rioting did not prohibit access to insured property). Plaintiff has not alleged either of the two essential requirements – (i) that the claimed business interruption results from "loss or damage" to property or (ii) a civil authority order has "prohibited access" to the insured property. Plaintiff thus cannot state a claim for Civil Authority, and its counts III and IV fail.

For similar reasons, Ingress and Egress coverage does not apply to the facts alleged. Plaintiff has not alleged, even in conclusory fashion, that "ingress or egress" has been "prevented," as required. (*See, e.g.*, Compl. ¶ 14 (alleging "ingress and egress to the property currently is **limited** due to the Stay at Home Orders") (emphasis added). While stay-at-home orders impact the activities that may be performed on the property (in-person dining) they do not "prevent" ingress and egress. (Compl. ¶ 19(d); Ex. 1 ¶ 7; Ex. 2 § 3.A.2.xv) And, in any event, the Complaint alleges that restrictions on in-person dining caused by stay-at-home orders entered to prevent the spread of COVID-19 (Compl. ¶ 10), not loss or damage to any other property. As discussed in section II below, COVID-19 is an excluded peril. *See, e.g.*, *City of Chicago v. Factory Mut. Ins. Co.*, No. 02 C 7023, 2004 WL 549447, at *3 (N.D. Ill. Mar. 18, 2004) (ingress/egress coverage inapplicable where cause of the orders that prevented access to the insured premises were not covered under the policy). Plaintiff cannot state a claim for Ingress and Egress, and counts VII and VIII fail.

11

With respect to Extra Expense, Plaintiff alleges it "suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent further physical damage to the premises by the presence or proliferation of the COVID-19 virus and the physical harm it could cause persons present there." (Compl. ¶ 60) But Extra Expense coverage does not cover losses from suspending operations to prevent physical damage or other harm. (Compl. Ex. A at 9) Rather, it covers "the excess cost necessarily ***incurred to continue the operation*** of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein… *Id.* (emphasis added). Plaintiff has not alleged that it incurred extra cost to continue its business because of loss or damage from any covered peril. Accordingly, Plaintiff cannot state a claim for Extra Expense, and counts III and IV fail.

Similarly, the "Sue and Labor" provision covers "expenses" of affirmative acts – "to sue, labor and travel" – to protect property following "actual … loss or damage by a peril insured against" (or "imminent" loss with the insurer's permission). This effectively imposes a contractual duty on the insured to mitigate its damages and, in doing so, affords recovery of mitigation expenses. Here, Plaintiff does not seek any expenses to "sue, labor [or] travel" to protect property; rather it seeks business income losses as a result of suspending its onsite dining services in response to stay-at-home orders. (Compl. ¶ 62) The Sue and Labor provision does not cover business losses.

In addition, the "fundamental limitation" on Sue and Labor provisions is that "the expenses in question must be incurred to preserve the insured property from a peril insured against under the basic policy." *Welspun Pipes, Inc. v. Liberty Mut. Fire Ins. Co.*, 891 F.3d 351, 356, n.3 (8th Cir. 2018); *RK Mechanical, Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp.2d 1013,1024 (D. Col. 2011); ("the expenses in question must be incurred to preserve the insured property from a peril insured against under the basic policy.") Here, Plaintiff alleges that it suspended its business to protect against the spread of COVID-19 virus, which is not a covered peril and (as discussed below) is expressly excluded. Plaintiff's claims for Sue and Labor coverage (claims IX and X) fail.

## II. Zwillo's Losses Are Excluded Because They Result from Actual or Threatened Contamination by a Virus Which Harms Human Health.

Even if Zwillo had alleged facts that could come within the Policy's coverage (which, as discussed in Section I above, it has not), Plaintiff's Complaint should also be dismissed for the separate, independent, reason that Plaintiff's claimed losses are excluded. The Policy expressly excludes any loss "caused by, resulting from, contributed to or made worse by" actual or threatened discharge of contaminants that harm human health, such as "virus[es]." (Compl. Ex. A, at 47) This exclusion applies regardless of whether the loss is "direct or indirect, proximate or remote or in whole or in part caused by, contributed by or aggravated by any physical damage insured under this Policy." (Compl. Ex. A, at 47). Missouri law enforces anti-concurrent causation language, like that used in the Policy, which excludes losses even if also caused by an insured peril. *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 844–45 (Mo. Ct. App. 2019). Thus, all losses from health-harming contaminants are excluded, even if they were also caused by some non-covered peril.

Significantly, the exclusion applies to any "loss or damage" from the COVID-19 virus. While the Policy requires direct physical loss or damage to come within coverage, the exclusion applies to ***any*** loss from the COVID-19 virus (including economic loss, like COVID-19), and even when there has been only a "threat" of discharge. Accordingly, if the insured were able to somehow come within the policy's coverage without showing direct physical loss or damage (which is not possible here), alleged economic loss from the COVID-19 virus is still excluded.

There is no legitimate question that the COVID-19 virus—a defined contaminant— "can cause or threaten damage to human health or human welfare" (Compl. Ex. A, at 47 ); Plaintiff alleges that COVID-19 has killed more than 53,000 Americans. (Compl. ¶ 6.) Nor is there any question that Zwillo's alleged losses were "caused by, contributed to or aggregated by" the threatened discharge of COVID-19. In Plaintiff's words, "[e]veryone is at risk of getting COVID-19" because infected individuals discharge "aerosol particles" when they "cough, sneeze or talk." (*Id*. at ¶¶ 9, 32-43). Customers have stopped patronizing Plaintiff's restaurant from "fear of being infected with or spreading COVID-19" and because of stay-at-home orders issued to stop the COVID-19 virus's spread (*Id*. at ¶¶ 10-11, 15, 43).

Nevertheless, Zwillo claims the exclusion for health-harming contaminants does not apply because a specific reference in the exclusion to "virus" applies only to viruses specifically listed in certain federal statutes. This argument fails as a matter of law for at least three reasons.

First, the Policy excludes damage from "contaminants," which it defines as a substance in any form (whether "solid, liquid or gaseous") that "cause[s] or threaten[s] damage to human health or human welfare." The specific reference to virus serves only as one *example* of the type of contaminant that can threaten human health to which the exclusion applies. The "including but not limited to" language makes clear that the specific reference to virus is illustrative only. *See Dan's Super Market, Inc. v. Wal-Mart Stores, Inc.*38 F.3d 1003, 1006 n.2 (8th Cir. 1994) ("The words, including but not limited to, ordinarily mean that a list is incomplete and only illustrative in nature."). Here, contaminants are described as substances that harm human health "including, ***but not limited to***, bacteria, virus, or hazardous substances as listed in the [identified Federal Acts] or as designated by the U.S. [EPA]." (emphasis added). COVID-19 clearly meets that description.

Second, the non-exhaustive example of "virus" as a contaminant is ***not*** limited to those viruses designated in the identified acts, contrary to Plaintiff's assertion at paragraph 55 of its Complaint. Plaintiff's interpretation violates the last antecedent rule. *Lockhart v. U.S.*, 136 S. Ct. 958, 963 (2016) (a limiting phrase appearing at the end of a list applies to the last item in the list); *U.S. v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2019) (holding that, under the rule of last antecedents, modifying language applied only to the final item in the list). This is particularly true here because it is well established in grammar, and under the law, that a comma before the word "or" is meant to introduce an independent clause and the lack of a comma before the phrase "as listed" means that the listing of federal statutes modifies only "hazardous substances" and does not limit the terms "bacteria" or "virus." *See, e.g.*, *U.S. v. Lara-Ruiz*, 681 F.3d 914 (8th Cir. 2012) (language at the end of a clause in a plea agreement modified only the last clause because "all the clauses in the exception are separated by commas and the last clause is separated from previous clauses by the disjunctive 'or.' Also, there is not a comma before the words 'of which' in the last clause"); *Winthrop Resources Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004) (in a clause

that defined default as "[t]he nonpayment by Lessee of any Lease Charges when due, or the nonpayment by Lessee of any other sum required hereunder to be paid by Lessee *which nonpayment continues for a period of twenty (20) days after written notice thereof from Lessor*," the 20 days written notice requirement did not modify the first clause and a default for the nonpayment of "Lease Charges" did not require twenty days written notice to cure).

Finally, Plaintiff's interpretation is nonsensical because it would render the reference to "virus" meaningless. None of the statutes named in the exclusion, nor their regulations, include any viruses in their listings of hazardous substances. *See* 33 U.S.C. § 1251 *et seq.*; 42 U.S.C. § 7401 *et seq.*; 42 U.S.C. § 6901 *et seq.*; 15 U.S.C. 2601 *et. seq.*; 40 C.F.R. § 131 *et seq.*; 40 C.F.R. Subchapter C; 40 C.F.R. Parts 239 through 282; 40 C.F.R. Subchapter R, Parts 700-799. Accordingly, Plaintiff's interpretation would, effectively write out the reference to virus in the Policy's contaminant exclusion. *See, e.g.*, *State ex rel. Blue Springs School District v. Grate*, 576 S.W.3d 262, 271 (Mo. Ct. App. 2019) (courts "aim to give a reasonable meaning to every provision [of an insurance policy] and to avoid an interpretation that renders some provisions trivial or superfluous") (internal quotations and citations omitted).

The court's holding in *Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, No. CIV.A. 399CV1623D, 2002 WL 356756, (N.D. Tex. Mar. 5, 2002), enforcing a near-identical exclusion, is consistent with Lexington's position. There, the exclusion was the same as here, except "fungi" was added to the list of examples of contaminants. In enforcing the exclusion, the court did not limit the definition of "fungi" to just fungi "listed in the" identified federal acts. *Id.* at *3.

Thus, the exclusion operates to bar coverage for all of Plaintiff's claimed loss. Any attempt to amend the Complaint would be futile because amendment cannot change the type of loss (economic and not a direct physical loss to property), or the language of the Policy (excluding loss from the COVID-19 virus).

## CONCLUSION

This Court should GRANT this Motion and dismiss Zwillo's claims with prejudice.

Dated: July 29, 2020.               Respectfully Submitted,

                                    DENTONS US LLP

                                    By: */s/ Gregory T. Wolf*
                                    Gregory T. Wolf        MO Bar No. 43717
                                    Lisa M. Krigsten       MO Bar No. 61583
                                    Paul M. Flucke         MO Bar No. 64849

                                    4520  Main Street, Suite 1100
                                    Kansas City, Missouri 64111
                                    Telephone: (816) 460-2400
                                    Facsimile: (816) 531-7545
                                    Gregory.Wolf@dentons.com
                                    Lisa.Krigsten@dentons.com
                                    Paul.Flucke@dentons.com

                                    *Attorneys for Defendant Lexington Insurance Company*

## CERTIFICATE OF SERVICE

This will certify that the above and foregoing was filed and served electronically using the Court's ECF filing system, this 29th day of July, 2020.

*/s/ Gregory T. Wolf*
Attorney for Defendant Lexington Insurance Company

17