IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ZWILLO V, CORP., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) |
| Plaintiff, | ) ) Case No. 4:20-00339-CV-RK |
| v. | ) ) ) |
| LEXINGTON INSURANCE CO., | ) |
| Defendant. | |

## ORDER

This lawsuit involves the issue of whether Defendant wrongfully denied insurance coverage on Plaintiff's commercial property claim stemming from COVID-19. Before the Court is Defendant's motion to dismiss. (Doc. 7). For the reasons set forth below, the motion is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

### I. OVERVIEW

Plaintiff Zwillo owns and operates the Westport Flea Market and Grill, a Kansas City dining establishment, and operates a catering business from the restaurant. Defendant Lexington Insurance Company entered into a commercial property insurance policy with Plaintiff covering the premises.

On April 27, 2020, Plaintiff filed a complaint alleging Defendant wrongfully denied coverage under the policy. The claims stem from the impact of the COVID-19 virus and stay-at-home orders issued by the City of Kansas City, Missouri, Jackson County, Missouri, and the State of Missouri, on their business. (Doc. 1 at 6-7).

The complaint alleges in part, "COVID-19 and the resulting response by state and local governments have . . . interrupted Plaintiff's business," yielding an 80 percent loss of revenue. (Doc. 1 at 2). The complaint states the "virus can be spread by respiratory droplets when an infected person coughs, sneezes, or talks"; a person "can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes"; the virus can live on surfaces for several days if not longer; and the virus can live in aerosols in the air. (Doc. 1 at 7-9).

Plaintiff further claims, "It is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby caused physical loss and damage to the property." (Doc. 1 at 4). Also, Plaintiff alleges the stay-at-home orders financially impacted it by limiting its business to carry-out and delivery services. (Doc. 1 at 6-7).

Plaintiff filed the complaint on its behalf and on behalf of all similarly situated. (Doc. 1 at 14). Plaintiff's ten-count complaint seeks damages for breach of contract as well as declaratory and injunctive relief. (Doc. 1 at 17-26).

Defendant moves for dismissal, arguing Plaintiff has not alleged facts that could support a finding of coverage and Plaintiff's claim for coverage is excluded under the policy. Further facts are set forth as necessary.

## II. STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Generally, the Court "'accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party.'" *Cole*, 599 F.3d at 861 (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In other words, to determine whether a complaint states a claim, the Court looks at two factors. First, the Court must identify the allegations that are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678. To state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by

2

mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. This step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court must review the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether Plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id*. at 681-82.

The parties agree Missouri state law applies in this diversity action. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc*., 751 F.3d 880, 883 (8th Cir. 2014). As such, the Court is "bound by the decisions of the Supreme Court of Missouri." *Id.* "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Id.*

Under Missouri law, the interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assurance Co.,* 337 S.W.3d 700, 705 (Mo. banc 2011). If the policy language is unambiguous, "the contract will be enforced as written." *Rice v. Shelter Mut. Ins. Co.,* 301 S.W.3d 43, 47 (Mo. banc 2009) (internal quotation marks omitted). But if the policy language is ambiguous, it will be construed against the insurer. *Id.* An ambiguity exists "if provisions of an insurance policy (when read in the context of the policy as a whole) are ambiguous, i.e., there is duplicity, indistinctness, or uncertainty in its meaning, and the policy is therefore open to different constructions." *Id.* Language is ambiguous if it is reasonably open to different constructions." *Jones v. Mid-Century Ins. Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009) (internal quotation marks omitted). When interpreting insurance policies, Missouri courts "appl[y] the meaning [that] would be attached [to the policy] by an ordinary person of average understanding if purchasing insurance." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (internal quotation marks omitted).

"An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017). "Such a request for a truncated consideration of portions of the policy is unavailing." *Id.* "Insurance policies are read as a whole, and the risk insured against is made up of both the general

3

insuring agreement as well as the exclusions and definitions." *Id.* When determining whether an ambiguity exists, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Id.* And "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Id.*

### III. ANALYSIS

While the insured bears the burden of proving coverage under an insurance policy, the insurer bears the burden of proving the applicability of its policy exclusion. *Fischer v. First Am. Title Ins. Co.,* 388 S.W.3d 181, 187 (Mo. App. W.D. 2012).

#### A. Coverage

Titled "Perils Insured Against," the Policy "insures against all risks of *direct physical loss of or damage to* property described herein including general average, salvage and other similar charges on shipments covered hereunder, if any, except as hereinafter excluded." (Doc. 1-1 at 12-13) (emphasis added). Plaintiff claims coverage under five provisions of the policy: (1) "Business Interruption," (2) "Extra Expense," (3) "Civil or Military Authority," (4) "Ingress or Egress," and (5) "Sue and Labor."

"Business Interruption" is defined in the policy as "loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein." (Doc. 1-1 at 8). Business Interruption loss is paid only during the "period of restoration," defined as beginning with "the date of direct physical loss or damage" by a covered peril and ending "on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." (Doc. 1-1 at 9).

"Extra Expense" is set out in the policy as "the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein." (Doc. 1-1 at 9).

The "Civil or Military Authority" provision "provides coverage for interruption of business conducted by the Insured resulting from loss or damage, by the perils insured against, . . . to any property when access to the premises is prohibited by order of civil or military authority, for a period not exceeding two (2) weeks." (Doc. 1-1 at 10).

4

Similarly, the Policy's Business Interruption provision relating to "Ingress or Egress" states that coverage is provided "for interruption of business conducted by the Insured resulting from loss or damage, by the perils insured against, . . . to any property thereby preventing ingress to or egress from the Insured's premises, for a period not exceeding two (2) weeks." (Doc. 1-1 at 10).

The Policy also provides for "Sue and Labor" coverage, as follows:

> In case of actual (or imminent, with prior notice to and approval from this Company) loss or damage by a peril insured against, it shall, without prejudice to the insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property, or any part of the property, insured hereunder without prejudice to this insurance; nor in the event of loss or damage, shall the acts of the Insured or of the Company in recovery, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. . . .

(Doc. 1-1 at 19).

Defendant argues Plaintiff has failed to state a claim upon which relief may be granted for the overlapping reasons that (A) Plaintiff has not alleged facts supporting Business Interruption Insurance in that (1) Missouri law interprets "physical loss or damage" to property as requiring physical alteration of the property, (2) the mere existence of COVID-19 on property is not direct physical loss or damage, (3) the speculative existence of COVID-19 on the property did not cause the business interruption, and (4) the stay-at-home orders and general public fear are not "direct physical loss to property." (Doc. 8 at 11-15). Defendant additionally argues that (B) Plaintiff has not alleged facts necessary to fall within the Policy's coverage for Civil Authority; Ingress/Egress; Extra Expense; or Sue and Labor. (Doc. 8 at 15-17).

Based on the Perils Insured Against provision, at the heart of the question of coverage here is whether Plaintiff can meet its burden of showing it suffered a "direct physical loss of or damage to property" so as to trigger the coverage provisions reproduced above.[1] Plaintiff has not met that burden. The term "direct physical loss of or damage to property" plainly requires physical loss of or some form of physical damage to the insured property to effect coverage. Put another way, the words "direct" and "physical," which modify the words "loss" and "damage" relay actual, demonstrable loss of or harm to some portion of the premises itself. Plaintiff's allegations

---

[1] Plaintiff's complaint describes the policy as "an all-risk policy," citing the Perils Insured Against provision. (Doc. 1 at 5). Both parties use this provision as the starting point of analysis in their briefing. *See* Doc. 8 at 2 (Defendant's Motion to Dismiss); Doc. 13 at 9 (Plaintiff's Suggestions in Opposition) and Doc. 20 at 14 (Defendant's Reply).

5

concerning the impact of the COVID-19 virus and stay-at-home orders do not plausibly allege "direct physical loss of or damage to" property. In short, the Court agrees with Defendant that "direct physical loss of or damage to property" requires physical alteration of property, or, put another way, a tangible impact that physically alters property.[2]

Plaintiff suggests that because the term "physical loss" is not defined in the policy, the Court should look to dictionary definition of "loss" for the plain and ordinary meaning of the term. Relying on Merriam-Webster, Plaintiff contends loss could encompass "the act of losing possession" and "deprivation." (Doc. 13 at 11, citing https://www.merriam-webster/dictionary/loss (last visited August 24, 2020)). Plaintiff claims it has been "deprived of the use of the property because of COVID-19 and related government shutdown orders." In short, Plaintiff argues the loss of the ability to access property constitutes physical loss of property. (Doc. 13 at 11).

But it is axiomatic that an insurance policy need not define every term. And the term "direct physical loss of or damage to" does not encompass simple deprivation of use. Further, reading the term "loss" in isolation goes against Missouri's well-established proviso that an insurance policy must be read as a whole. *Owners Ins. Co.*, 514 S.W.3d at 617.

In so ruling, the Court notes Missouri state courts have not addressed the issue of whether damage from the possible or actual presence of a virus or loss of use due to a stay-at-home order because of the virus constitutes "direct physical loss of or damage to" property.[3] However, several other courts have examined the same or meaningfully similar policy language in this context with the same result. *See, e.g., Diesel Barbershop, LLC, v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (determining the plaintiff failed to state a claim for

---

[2] The rationale bears out for the five defined coverage provisions as well, each of which incorporates the Perils Insured Against clause and each of which includes language, that, when read in the context of the policy as a whole, does not extend coverage under these facts. "Business Interruption" references "direct physical loss or damage" (Doc. 1-1 at 8) and as to timing includes the phrase "on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality" (Doc. 1-1 at 9); "Civil or Military Authority" references the perils insured against and requires "loss or damage . . . to any property" (Doc. 1-1 at); "Extra Expense" is set out in the policy as "the excess cost . . . that would not have been incurred had there been no loss or damage by any of the perils to Real and/or Personal Property" (Doc. 1-1 at 9); "Ingress or Egress" applies "for interruption of business . . . resulting from loss or damage, by the perils insured against, . . . to any property thereby preventing ingress to or egress from . . . ." (Doc. 1-1 at 10); "Sue and Labor" provides for coverage in case of "actual (or imminent . . . ) loss or damage by a peril insured against, [when] the Insured [must] sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property, or any part of the property, insured hereunder . . . ." (Doc. 1-1 at 19). Read in the context of the Perils Insured Against clause, each of the five provisions requires direct physical loss of or damage to the property.

[3] Notably, neither party relies on any Missouri state cases examining the policy language at bar in any context.

6

"accidental direct physical loss to covered property"; holding unpersuasive a line of cases finding coverage under similar policy language where there was no tangible destruction to the physical property); *Galvrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) (dismissing restaurant's claim that it was entitled to coverage for lost business income as a result of stay-at-home orders because there was no "direct physical loss or damage"; holding no factual development or amendment to the complaint could "constitute the direct physical damage or injury that's required under the policy"); *Turek Enters. v. State Farm Mut. Auto. Co.*, No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) (dismissing case because the term "direct physical loss to Covered Property" requires a loss *to* the property, and not just any loss, but a direct physical loss); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No:20-cv-907-CAB-BLM, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (dismissing case because under California law "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within ordinary and popular meaning of that phase"; "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'") (citation omitted); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 20-cv-2160 (N.D. Ill. Sept. 21, 2020) (holding there was "no direct physical loss" because the "coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property" and similarly rejecting argument for civil authority coverage); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, No. 8:20-cv-1605-T-30AEP (M.D. Fla. Sept. 28, 2020) (dismissing case and finding no coverage under policies that require "direct physical loss of or damage to" property under similar facts); *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020) (dismissing case and holding "virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance").

Whether the complaint is couched in terms of COVID-19's presence on the premises or of loss of use of premises due to the stay-at-home orders (or the virus itself), Plaintiff has failed to state a claim upon which relief may be granted because the policy does not cover the alleged claim.

### B. Pollution and Contamination Exclusion

Even if Plaintiff's claims could fall within the realm of "direct physical loss of or damage to property," dismissal would be appropriate for the independent reason that Defendant has met its burden of establishing the Policy contains an applicable exclusion prohibiting coverage. Titled the "Pollution and Contamination Exclusion," that provision states:

7

> This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy. . . .
>
> CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

(Doc. 1-1 at 47.)

By its plain terms, the Policy does not cover loss or damage caused by, resulting from, contributed to, or made worse by actual or alleged "Contaminants or Pollutants," as defined therein. Relevant to this case, the term "Contaminants or Pollutants" is defined as (1) any solid, liquid, gaseous or thermal, irritant or contaminant, (2) including examples not relevant here, (3) which after its release can cause damage to human health or cause damage or loss of value or loss of use to property, (4) including virus. Here, then, the provision in question expressly excludes damage or loss of value and even loss of use of property caused by a virus. As alleged in the complaint, COVID-19 is plainly a virus.

Plaintiff argues the exclusion is inapplicable for five reasons. First, relying on a case applying Louisiana law, Plaintiff claims the exclusion is meant to apply to traditional environmental and industrial pollution. Missouri precedent directs a different result because the exclusion at bar includes "virus" as a part of its definition. *See, e.g., Heringer v. Am. Family Mut. Ins.*, 140 S.W.3d 100, 105 (Mo. Ct. App. 2004) (holding that exclusion was not limited to traditional exclusion as applied to lead because the policy "specifically and unambiguously defines lead as a pollutant," and acknowledging case law holding that there is no requirement the insured "be in violation of an environmental law for the pollution exclusion to apply" because the exclusion must be enforced as written).

Second and relatedly, Plaintiff argues the industry has developed a "virus-specific exclusion" that would preclude coverage. As Defendant notes and as found above, however, the policy at bar also expressly excludes from coverage damages caused by virus.[4]

Third, Plaintiff contends the "last antecedent rule" applies to compel a reading that the exclusion does not apply. Plaintiff argues in order to fall within the definition of "Contaminants or Pollutants," a virus must be an "irritant" or a "contaminant." Jumping over the word "including," the argument continues that "irritants" or "contaminants," which Plaintiff recasts in the plural form, are defined as "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health . . . including, but not limited to, bacteria, virus, or hazardous substances. . . . " Plaintiff thus argues the word "virus" modifies only "waste" in the list of irritants and contaminants; Plaintiff says this is "clear by the use of the singularly 'its' in a clause following the singular 'waste.'" Plaintiff then employs the dictionary definition of waste to argue a virus does not fit within that definition and therefore falls outside of the scope of the exclusion; Plaintiff further asserts that at a minimum its interpretation is reasonable, making the exclusion ambiguous and requiring construction against Defendant.

Plaintiff's argument is without merit for several reasons. As an initial matter, accepting Plaintiff's reading of the exclusion requires overlooking the word "including" (and the comma before it) that precedes the phrase "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." This the Court cannot do. *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 814 (Mo. banc 1997) ("every word in a contract is to be given meaning if possible"). Further, Plaintiff's reading that "after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder" refers only to "waste" because "waste" is the only single noun in that category would require the reader to ignore the phrase "any solid, liquid, gaseous or thermal *irritant* or *contaminant*" – both nouns in their single form – from which the whole of the definition flows.

Adopting Plaintiff's reading would controvert Missouri's longstanding rule that a "court may not create an ambiguity . . . to distort policy language and enforce a construction it feels is more appropriate." *Taylor v. Bar Plan Mut. Ins. Co*., 457 S.W.3d 340, 344 (Mo. banc 2015); *see*

---

[4] Plaintiff includes a citation to a statement to state insurance regulators concerning the referenced industry exclusion; notably, the statement references "viral or bacterial contamination" (Doc. 13 at 19), terms that overlap with the exclusion at bar.

9

*also Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) ("Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.").

Fourth, Plaintiff argues "it does not make sense that inserting the word 'virus' to provide an example of the types of 'waste' that can qualify as a 'contaminant' or 'irritant' was intended to exclude coverage for all virus-related losses, including those caused by a pandemic, but rather it merely intended to ensure losses caused by viral or bacterial agents identified as toxic by the EPA would be excluded as another form of pollution." Once again, this argument requires the reader to read singular nouns as plural and to overlook the word "including" (and the comma before it) that precedes the phrase "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." As explained above, this the Court cannot do.

Fifth, Plaintiff argues fact issues preclude dismissal under the exclusion. Plaintiff argues (1) whether a virus falls within any of the federal statutes listed is a solid, liquid, gas, or of a thermal nature, and (2) whether and to what extent viruses are listed in the federal statutes included in the exclusion are both issues for determination by the finder of fact. The Court finds neither to be a material issue precluding dismissal.

For these reasons, the Court finds Defendant has met its burden of establishing that the exclusion applies and is entitled to dismissal.

### C. Recent Cases within this District

In so ruling, the Court has considered Plaintiff's argument that the Court should deny Defendant's motion to dismiss to be in harmony with other rulings in this district: (1) *Studio 417, Inc. et al., v. The Cincinnati Insurance Co.*, No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), (2) *K.C. Hopps, Ltd. v. The Cincinnati Ins. Co.*, No. 20-cv-00437 (W.D. Mo. Aug. 12, 2020), and (3) *Blue Springs Dental Care, LLC et al., v. Owners Insurance Company*, No. 20-cv-00383 (W.D. Mo. Sept. 21, 2020). Plaintiff relies on *Studio 417* and *K.C. Hopps* for determinations of complaints surviving dismissal where the policy provided coverage for "accidental physical loss or accidental physical damage." The *Studio 417* and *K.C. Hopps* Court found the policy language ambiguous and therefore determined Plaintiffs had stated a claim under various provisions. However, that Court emphasized that the rulings are subject to further review; notably, the Court stated "[s]ubsequent case law in the COVID-19 context, construing similar provisions, and under similar facts, may be persuasive." *Studio 417, Inc.*, No. 20-cv-3127, Doc. 40 at 16-17. In *Blue*

*Springs Dental Care*, the policy language at bar was the same as in the Perils Insured Against provision here – "direct physical loss from or damage to" – and the Court again found that the complaint survived dismissal with the same warning that additional development of caselaw may cause the Court to reconsider its rulings on summary judgment. *Blue Springs Dental Care*, No. 20-cv-00383, Doc. 20 at 19.

The main distinction between the case at bar and *Studio 417*, *K.C. Hopps*, and *Blue Springs Dental Care* is here the policy contains the exclusion examined above. Additionally, the Court concludes dismissal is warranted based on a reading of the policy as a whole. *Owners Ins. Co.*, 514 S.W.3d at 617. To the extent this Court's ruling – finding the language in the policy plainly and unambiguously does not cover the claims – conflicts with *Studio 417*, *K.C. Hopps*, and *Blue Springs Dental Care*, this Court respectfully disagrees with those cases.

### IV. Conclusion

Although the Court is sympathetic to the plight of businessowners affected by COVID-19 and related aftermath, including the economic effect of the stay-at-home orders, Plaintiff and the class it seeks to represent are not entitled to relief under the Policy.

Leave to amend should be freely granted. Here, however, all of Plaintiff's claims are dismissed without prejudice because the Court finds Plaintiff cannot meet its burden of establishing the insurance claims are covered, and, even assuming Plaintiff could show coverage based on "all risks of direct physical loss of or damage to property," Defendant has met its burden of demonstrating the applicable exclusion cleanly indicates otherwise.

Defendant's motion to dismiss (Doc. 7) is granted, and this case is dismissed without prejudice.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 2, 2020